## Bryant v. Chesapeake & O. Ry. Co.

Dec. 12, 1941.

Dysard & Dysard and R. T. Kennard for appellant.

Theobald, Theobald & Theobald and Hunt & Bush for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The circumstances which led to the death of Emerald D. Bryant are so fully stated in our opinion reversing a judgment for $12,000 in favor of his administrator (Chesapeake & Ohio Railway Co. et al. v. Bryant's Adm'r, 272 Ky. 339, 114 S. W. (2d) 89, 91) that a recital of them would be unwarranted. It is sufficient to say that this Court held that he was guilty of contributory negligence as a matter of law since he had actual knowl-

edge of the approach of the train at the time he placed himself in a position of peril on the tracks. Following the return of the case to the Circuit Court, it was retried, and at the conclusion of the testimony the Court peremptorily instructed the jury to return a verdict for the defendants. This appeal is from the judgment entered upon that verdict.

The only difference between the evidence adduced at the two trials to which our attention has been called by appellant's counsel, in their attempt to avoid the consequences of the Law of the Case Rule, is that found in the language employed by the witness, Mrs. Eva Brown McCormack. At the first trial she testified:

"Q. You notice anything about the train when you were there at the back gate? A. Yes, sir; we heard the train whistle.

"Q. Where did it whistle for? A. I wouldn't know where it whistled for; it whistled, I would judge, at Haldeman; maybe at Gates; wherever it whistles—west—beyond the tunnel."

\* \* \*

"Q. Was there anything said between you and this young man about the train at that time? A. Well, yes, sir.

"Q. Tell the jury what was said between you and him about the train coming. A. Well, I had promised mom that day—she asked me to go in early—when I heard the train whistle I told him there was the whistle and I thought I should go in.

"Q. Then he knew at that time that train 24 was coming? A. *He knew it was coming; yes, sir.*

"Q. Knowed the train was coming and he left you and started in the direction of his own home? A. Yes, sir."

In effect, appellant's counsel contend that since at the first trial this witness stated that Bryant *knew* the train was coming, and at the second trial, in answer to the question whether he "knew the whistle had sounded and the train was coming," answered: "Well, now, I know I just said that to him," the evidence was no longer sufficient to establish that he was actually conscious of the train's approach when he went upon the

crossing. But it seems to us obvious that this Court's finding on the first appeal was necessarily based, not upon the conclusion drawn by the witness from what she had said to Bryant, but upon its own conclusion as to the necessary effect of what she had said, under the circumstances appearing.

Moreover, Mrs. McCormack's testimony was not the only evidence that Bryant knew of the train's approach, or that he was guilty of contributory negligence. As we said in our former opinion:

> "While several witnesses testified that they did not hear the train whistle, a number of them say they heard it, and all of them heard the noise of the train. Some of these witnesses were in the open, and others were at home in bed. Several of them were a considerable distance from the crossing. The decedent, in full possession of his faculties, was in a better position to hear than any of these other persons, and, in addition, must have seen the headlight on the engine if he looked at all."

And in the concluding paragraph:

> "The evidence, while purely circumstantial, strongly indicates that the decedent was either stooping over or else sitting on the tracks, removing his shoe, at the time when the accident occurred."

Many authorities are cited by appellant's counsel in an attempt to convince us that the case should have been submitted to the jury; but an equal or greater number could be cited holding that where there is no substantial variance in the evidence introduced, the conclusion of this Court on the effect of the testimony given at the first trial, and the applicable law, becomes the law of the case inexorably governing all future trials. Thus it becomes necessary to affirm the judgment appealed from, and it is so ordered.